```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

United States of America

                              Plaintiff,    CV-05-0562 (CPS)

    - against -
                                            MEMORANDUM
B.C.F. Oil Refining Inc., Cary Fields,      OPINION AND
and 1.85 Acres of Land, More or Less,       ORDER
Located at 360-362 Maspeth Ave.,
Brooklyn, New York,

                              Defendants.

-----------------------------------------X
```

SIFTON, Senior Judge.

Plaintiff, the United States Government, commenced this action by filing a complaint against defendants B.C.F. Oil Refining Inc. ("B.C.F."), Cary Fields ("Fields"), and the land located at 360-362 Maspeth Ave., Brooklyn, New York ("1.85 Acres of Land"). Pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601-9675, the government seeks to recover costs incurred by the United States in connection with the release, or threatened release, of hazardous substances into the environment from the B.C.F. Superfund Site (the "Site"). Presently before the Court is the plaintiff's motion for entry of final judgment against B.C.F. pursuant to Federal Rule of Civil Procedure 54(b). For the reasons set forth below, the plaintiff's motion is granted.

## BACKGROUND

The following facts are drawn from the parties' pleadings and submissions in connection with the present motion.

From 1986 until 1994, B.C.F. owned and operated a waste oil processing facility at 360-362 Maspeth Ave., Brooklyn, New York, where it treated waste oil to produce a fuel product suitable for resale to the public. B.C.F. was only authorized to accept non-hazardous waste oil containing no more than 50 parts per million of polychlorinated biphenyl compounds ("PCBs"). In April 1994, B.C.F. discovered that it had accepted waste oil which contained unacceptable levels of PCBs. B.C.F. ceased operations at the facility in 1994, but did not remove the contaminated substances from its tanks. In 2000, B.C.F. abandoned the facility, including all of the PCB contaminated waste oil in the tanks.

Due to the environmental dangers posed by these substances, the Environmental Protection Agency ("E.P.A.") performed a removal action at the site pursuant to CERCLA from May 2000 to October 2000. The E.P.A. represents that its response costs totaled at least $3.5 million as of January 31, 2005 and that it continues to incur cleanup costs in connection with the Site. On July 17, 2000, the E.P.A. filed and perfected a lien in the office of the Kings County Clerk against the property where the facility is located, pursuant to 42 U.S.C. § 9607(l). According

to the plaintiff, this property was sold at foreclosure auction on August 4, 2005. The highest bidder closed on the purchase of this property on July 5, 2006.

On January 31, 2005, the United States filed a complaint for recovery *in personam* against B.C.F. (as the "owner and operator" of the facility at the Site) and Fields (as an "operator" of the facility at the Site), alleging that under Sections 107(a) of CERCLA, 42 U.S.C. § 9607(a), the defendants were jointly and severally liable for the response costs incurred by the United States in connection with the release or threatened release of hazardous substances into the environment. The United States also filed for recovery *in rem* against defendant 1.85 Acres of Land, which is the property on which the Site is located, to recover costs through foreclosure of the lien of the E.P.A. against the property, pursuant to Section 107(l) of CERCLA, 42 U.S.C. § 9607(l). At the time of the filing of the complaint, B.C.F. was the owner of this land and had been the owner at all times relevant to the matter.

B.C.F. did not contest any of the allegations in the complaint, and the United States and B.C.F. agreed to a stipulation regarding B.C.F.'s liability for all unreimbursed past response costs and for future response costs which may be incurred by the E.P.A. in connection with the Site. On April 3, 2006, the United States and B.C.F. requested that I enter a

Stipulation and Order of Judgment against B.C.F. On April 5, 2006, I entered a Stipulation and Order Determining Liability against B.C.F. but declined to enter a final judgment. The United States now moves for an entry of judgment under Fed. R. Civ. P. 54(b) ("Rule 54(b)"), to which neither B.C.F. nor Field objects.

**DISCUSSION**

In an action with multiple claims or multiple parties, Rule 54(b) allows a court the flexibility to direct the entry of final judgment as to one or more claims or parties prior to the resolution of all claims, upon the express determination by the court that there is no just reason for delay. Once certified under Rule 54(b), the parties to the action may seek an immediate appeal without waiting for the remaining issues in the case to be decided.

Rule 54(b) provides in relevant part that:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The rule requires that "(1) multiple *claims* or multiple *parties* must be present, (2) at least one claim, or the rights

and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make 'an express determination that there is no just reason for delay' and expressly direct the clerk to enter judgment." *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992) (emphasis in original); *see also Information Resources Inc. v. The Dun and Bradstreet Corp.*, 294 F.3d 447, 451 (2d Cir. 2002). Each of these elements is considered below.

*1. Multiplicity of Claims or Parties*

The complaint in this case names three defendants, all of whom remain parties to the action.

*2. Final Decision on a Claim*

A decision is considered final when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)); *see also Ginett*, 962 F.2d at 1092; *Information Resources,* 294 F.3d at 452 (noting that non-final rulings include those orders granting or denying summary judgment that only partially adjudicate a claim, orders dismissing only a portion of a claim or situations where the "exact contours of the . . . ruling are not discernable"). In the present case, B.C.F. has

stipulated as to liability for its violations of CERCLA. Since there is no need for further litigation on the merits of the plaintiff's case as between the United States and B.C.F., the finality requirement has been met.

*3. No Just Reason for Delay*

While "historic federal policy [disfavors] piecemeal appeals," *Curtiss-Wright Corp. v. General Electric Corp.*, 446 U.S. 1, 10 (1980)(quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)), Rule 54(b) "expressly contemplates the entry of 'partial' final judgments" as a response to the complexities of modern litigation and, in particular, the liberal joinder of claims and parties encouraged by the Federal Rules of Civil Procedure. *Ginett*, 962 F.2d at 1093. Application of this rule is left to the discretion of the district court and "is to be exercised in the interest of sound judicial administration." *Curtiss-Wright Corp.*, 446 U.S. at 8 (quoting *Sears, Roebuck & Co.*, 351 U.S. at 437); *Ginett*, 962 F.2d at 1095.[1]

"In determining whether to grant partial judgment, a court should consider the relationship between the adjudicated and unadjudicated claims." *Siderpali, S.P.A. v. Judal Industries,*

---

[1] While the advisory committee notes to Rule 54(b) indicate that the rule should only be used in an "infrequent harsh case," that benchmark has been deemed unworkable by the Supreme Court and in the Second Circuit. *Curtiss-Wright Corp.*, 446 U.S. at 10; *Ginett*, 962 F.2d at 1094-95.

*Inc.*, 833 F.Supp. 1023 (S.D.N.Y. 1993) (citing *Gaetano Marzotto & Figli, S. P. A. v. G. A. Vedovi & Co.*, 28 F.R.D. 320, 324 (S.D.N.Y. 1961)). Claims are inappropriate for certification under Rule 54(b) if they are "inherently inseparable" from each other or "inextricably interrelated." *Ginett*, 962 F.2d at 1096 (internal quotations omitted). As examples, claims may be too closely related under this standard if, in ruling on an appeal from the decided claim, an appellate court would have to decide the merits of a claim not yet appealed or if the district court's resolution of one of the remaining claims would render an appellate decision advisory or moot. *Id.* at 1095. However, if the resolved claims are separable or extricable, so that certifying them under 54(b) will not require an appellate court to decide any issues which have yet to be decided by the district court and no future disposition of the district court will impact the ruling of an appellate court, then the district court may certify the issue at its discretion.

Even when the claims are separable, a district court should use the power granted by 54(b) "sparingly" in light of the policy against piecemeal appeals and should find that there is "no just reason for delay" only when there exists "some danger of hardship or injustice" that arises from a delay and which may be avoided by directing an entry of partial final judgment. *O'Bert v. Vargo*, 331 F.3d 29, 40-41 (2d Cir. 2003) (quoting *Campbell v.*

*Westmoreland Farm, Inc.*, 403 F.2d 939, 942 (2d Cir. 1968)); *see also Ginett*, 962 F.2d at 1096-97. Such hardship includes situations where an "expensive and duplicative" trial may be avoided by allowing a dismissed claim to be reversed before trial on the remaining claims, *Cullen v. Margiotta,* 811 F.2d 698, 711 (2d Cir. 1987) abrogated on other grounds by *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987) (citing *Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 70 (2d Cir. 1977)), or when a defendant "might be prejudiced by a delay in recovering a monetary award." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997) (citing *Curtiss-Wright Corp.*, 446 U.S. at 11-12; *Ginett*, 962 F.2d at 1097).[2]

The claims in the present case, though based on the same set of operative facts, are independent of each other. In a suit under CERCLA, parties are generally deemed to be jointly and severally liable for the government's cleanup costs, *U.S. v. Alcan Aluminum Corp.*, 990 F.2d 711, 721 (2d Cir. 1993), and, as

---

[2] While the hardship discussed in the case law is usually the result of a delay to a party's ability to immediately appeal, the entry of final judgment under 54(b) has other significant consequences, such as allowing a party to begin to collect on an adjudicated claim. Therefore, "even though Rule 54(b) was promulgated largely to permit occasional piecemeal appeals . . . [it does not appear that] either its language or the sound administration of justice require that its use be confined solely to permit appeals . . . . [T]he district court may properly consider all the consequences of a final judgment" in determining whether to grant a 54(b) motion. *Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 949 n.7 (7th Cir. 1980); *see also Brandt v. Home Diagnostics, Inc.*, No. 3:01CV1889(SRU), 2006 WL 1729268 (D. Conn. June 23, 2006) (regarding defendant estate which was granted summary judgment, entry of final judgment was found to be appropriate under 54(b) because it would allow executrix to finalize distribution of estate and avoid costs that would result from further delay).

such, a determination of liability for one party is not tied to a determination for the other party. In addition, since the complaint alleges that Fields is liable as an "operator" and because a facility can have more than one "operator" under CERCLA, *Geraghty and Miller, Inc. v. Conoco Inc.*, 234 F.3d 917, 928 (5th Cir. 2000), whether or not B.C.F. is liable as an owner or operator of the facility does not effect the liability of Fields (and visa versa).

There is also a risk of hardship for the plaintiff in this case if this motion is not granted. The 1.85 Acres of Land, on which the government has perfected a lien, was sold at foreclosure auction and the highest bidder closed on July 5, 2006. While the government may be entitled to a payment from the surplus after the mortgagee has been paid, the government believes that the state court may require a judgment to have been entered against B.C.F. prior to its approval of any payment from such surplus. Since the property is B.C.F.'s only known existing asset, if the state court were to hold a proceeding on the distribution of the surplus *prior* to the entry of final judgment of liability against B.C.F. and, as a result, deny the government a share of the surplus, the government would likely lose its only opportunity to recover from B.C.F. To avoid such a scenario, it is appropriate for the court to enter final judgment against B.C.F. at this time.

Finally, since B.C.F. stipulated to liability in this case, it is highly unlikely that B.C.F. will subsequently appeal an entry of judgment as to its liability in this matter. Therefore, there is no reason to be concerned that certification under Rule 54(b) in this case would run afoul of the policy against piecemeal appeals.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for entry of final judgment against B.C.F. is granted. The clerk is directed to enter judgment in favor of plaintiff and furnish a copy of this opinion to all parties.

SO ORDERED.

Dated :   Brooklyn, New York
          January 9, 2007

By: /s/ Charles P. Sifton (electronically signed)
United States District Judge